The opinion of the Court was delivered by
Wardlaw, Ch.
On the questions presented by this appeal, we are content generally with the reasoning and conclusions of the circuit decrees: and none requires additional observations, except that in the fourth ground of appeal, as to the bar of the statute of limitations.
In Glenn vs. Sims, 1 Rich. 84, the single bill which is the cause of action in the present suit, came under discussion in our Law Court of Appeals, and it was determined in that case, that as J. B. Glenn united in himself the characters of obligor and obligee, no suit at law could' bo maintained on the specialty. This imperfection in the form of the instrument, prevents the remedy of the plaintiff, either by debt or covenant, according to the procedure of the Court of Law; but it does not annul the contract, nor hinder the execution of it here, according to the intention of the parties. Judge RichardsoN, in delivering the opinion of the Court, speaks of the inconsistent relations of Glenn to the obligation, as making a case very like that where a testator appoints *190 bis debtor executor of his will. The ease thus put, aptly illustrates the power of this Court to afford relief, where the formal inconsistency of being both plaintiff and defendant obstructs a suit at law. tfhe appointment of a debtor to be executor, even if he be one of several joint or joint and several debtors, or one of several executors, operates at law as a release or extinguishment of the debt; and this is on the principle that a debt is merely a right to recover the amount, by way of action, and as an executor cannot maintain an action against himself, the action is suspended; and a personal action once suspended by the voluntary act of the party entitled, is forever gone and discharged. 2 Wms. on Ex’ors. 937. But in equity, an executor is accountable for his debt as general assets of the estate. Lord Thurlow, in Carey vs. Goodinge, (3 Bro. C. C. Ill,) and Sir William Grant, in Berry vs. Usher, (11 Ves. 90,) treat the point as perfectly settled, that the appointment of a debtor to be executor is no more' than a parting with the action, and that it shall not operate as a release against creditors or legatees. If an executor should die indebted to his testator by bond, could it be doubted that the debt would be sot up in equity as a specialty against the executor’s estate ? The contract under consideration has in every respect the form of a single bill, except that the name of the obligee is added as one of the obligors. It is an agreement to pay money— a debt by specialty — and is in no other sense a covenant, than as every bond is a covenant. I suppose that the action of covenant might be brought upon a bond for the payment of money, and that if such form of action wore adopted, the statute of limitations would be applicable. It is not the usual course of equity to torture into a covenant an instrument susceptible of a different construction, merely for the purpose of defeating the remedy of the party entitled. What other reason is there for denominating this single bill a covenant, than to bring it within the operation of the statute of limitations ? It may certainly be construed otherwise. If we should express the contract between these parties by two instruments, we would then have in one, the promise *191 under seal of tbe other obligor» to pay Glenn $15,000, a mere debt; and in tbe other the agreement of Glenn to incur a rateable share with the obligors of loss and liability. • Or suppose we consider Glenn’s name struct out from one of the two sides of the contract, the result would be the same. If his name as an obligor be cancelled, he would still be bound in this Court, on proof of the intention of the parties, while seeking equity to do equity, by assuming his just share of responsibility. It may be urged with much plausibility, and upon good authority, that the effect of Glenn’s execution of the instrument as an obligor, is to expunge his name as obligee. In Devore vs. Mundy, 4 Strob. 15, the payee of a note, payable to himself of bearer, transferred it to a third person, and intending to bind himself as surety of the original maker, signed his name as a maker. The Court say: “ The rule in such cases as this, is to give effect, if possible, to thé intention of the parties. The intention of the defendant to bind himself being ascertained, our business, if we legally can, is to give it effect. The note may be very well read under such circumstances, as if the name of the payee were struck out; his signature as maker may very well have that effect; and it would then stand , as a naked promise on his part to pay the bearer. This must be so, as is said in Stoney vs. Beaubien, 2 McM. 813, because otherwise no legal effect would result from the defendant’s signature as maker.” The application of this case may be impugned, as being upon a commercial instrument, in relation to which the rules of the Court of law are less stringent than as to obligations. Granting this, it is difficult to perceive any reason why a Court of Equity should not extend such liberal construction to all instruments. The case of Cockrell vs. Milling, 1 Strob. 444, demonstrates the disposition of our Law Court to give effect to the intention of the parties, at the sacrifice of form, oven in sealed instruments. It was held there, that one writing his name on the. back of a single bill — which purports of itself to be a more assignment without guaranty — was liable as surety or indorser of the obligor, upon proof of his intention to be so bound.
*192 If we may consider, then, this instrument as being in blank as to the name of the obligee, there is no difficulty in maintaining it as a single bond. In Gray vs. Rumph, 2 Hill Ch. 6, a bond was set up in this Court, although it was in blank as to the obligee and penalty. This is a mere illustration of the principle that equity will not permit a trust to fail for the lack of a trustee. If this single bill had been drawn payable to some stranger, in trust for G-lenn, undoubtedly effect would have been given to it as a debt by specialty, and yet it is the same thing in substance. If a testator should give to a married woman, for her sole and separate use, the note or bond of her husband, it will not be contested that equity would supply a trustee and give effect to the legacy. Lord Hardwicke says, in Skip vs. Huey, 3 Atk. 93, there are many eases where equity will set up debts extinguished at law against a surety as well as against a principal, as where a bond is burnt or cancelled by mistake, or delivered to the obligor by his fraud.
In Hill vs. Calvert, 1 Rich. Eq. 56, the ordinary struck out the name of one of the obligors in a guardianship bond, and permitted another to sign as a substitute; yet although the ordinary was the nominal obligee and legal owner, it. was held that the first obligor was not discharged, nor the second bound.
The survivor only of several obligors of a bond is liable at law, yet the representative of a deceased obligor may be successfully pursued in equity.
All these cases, and many others might be cited in illustration, establish the general principle, that the intention of parties, safely deduced from the instruments of contract, shall not fail in equity, by reason of. defect of form, which might defeat recovery at law. In the present case, my mind forms the conclusion, from the instrument itself, that it was the intention of the parties to create a debt by specialty, not within the statute of limitations, and to be barred only by lapse of time.
The same conclusion may be attained by a different course of reasoning.
*193 Courts of Equity will grant relief in cases of mistake in written contracts, not only where the fact of mistake is expressly established, but also where it is fairly implied from the nature of the transaction. Thus, in cases where there has been a joint loan of money to two or more obligors, and they are by the instrument made jointly liable, but not jointly and severally, the Court will reform'the bond, and make it joint and several, upon the reasonable presumption from the nature of' the transaction, that it was so intended by the parties, and was' omitted by want of skill or mistake. 1 Story Eq. § 162.
In Simpson vs. Vaughan, 2 Atk. 31, where there was an actual loan to partners, and their joint bond was taken, Lord Hardwicke inferred mistake in the form of the bond, without express- proof, .and said: “ The debt arises from the contract itself, and if there is any defect in the bond, the Court'will resort to what was the principal intention of the parties, that they should be severally and jointly bound.”' The cases on this point are well collected and explained by Chancellor Harper, in Pride vs. Boyce, Rice Eq. 288. See also King vs. Aughtry, 3 Strob. Eq. 156.
Where a bond is executed by one partner in the name of the firm, -all the partners intending to be bound by the obligation, the obligee has no remedy at law against the firm, but may charge them in equity on the ground of mistake. McNaughten vs. Partridge, 11 Ohio, 223. In such case, there would be a merger at law of the original simple contract', and the partner executing the bond would be alone liable. 2 McM. 348. Gardner vs. Hust, 2 Rich. 601.
Where a bond is intended to be executed,’but the seal is omitted by accident, relief will be granted in equity, although the party might proceed at law upon the simple contract, on the ground, that the consideration of the bond cannot be' enquired into; and it might be added, because a bond-is' not within the statute of limitations. Montville vs. Haughton, 7 Conn. R. 549; Wadsworth vs. Wendell, 5 John. Ch. 225.
In Argenbright vs. Campbell, 3 Hen. & Munf. 144, a written *194 instrument was declared to be a good bond, with collateral condition for the benefit of the obligee, although the obligor’s name was not signed opposite to the seal, but between the penal part and the condition, and the name of the obligee was signed at the foot of the condition, opposite to the seal; both signatures being attested by the same witnesses.
In every case where an imperfect bond is set up in equity, it is established with all the incidents of a specialty.
In the case before us, it is not necessary, in my opinion, to look beyond the instrument itself in order to ascertain the mistake of the parties. But if proof of mistake by extrinsic evidence is needed, I think it is afforded by Huson, the witness of defendants ; and his testimony is competent to show mistake, but incompetent to give construction to the instrument. He testifies that, after the rejection of several other forms, Dr. Winn smith objected to the form of obligation finally adopted, as on his construction he was liable for the whole, and that this was the reason that Glenn signed the sealed note — that Glenn was required to sign the note in order to put all on equality,^ as he retained one share. It is obvious from this testimony, that the only purpose of Glenn’s signature to the specialty was to furnish evidence of his rateable liability. The substance of Dr. Winnsmith’s objection to the obligation is, not that he was bound for the whole, but that Glenn, a partner in the enterprise, was not also bound. To avoid the inference of mistake, one of the counsel for defendants suggests to us that it was the deliberate purpose of some of the obligors, in requiring Glenn’s signature as co-obligor, to render the instrument a nullity, upon which no suit could be brought, but we cannot presume so gross a fraud as this would imply on the part of respectable gentlemen, without some proof.
We are further of opinion, that there is neither need nor propriety to look beyond the single bill itself, and the circumstances connected with its execution, to ascertain the intention of the parties, as the instrument is sufficiently definite in itself, and contains no reference to any other contract.
*195 It is ordered and decreed, that-,the decree be affirmed and the appeal be dismissed.
JOHNSTON, Ch. concurred.
DaRGAN, Ch.
I concur in the judgment of this Court, that this suit is not barred by the statute of limitations. I do not concur, however, on the ground, that the instrument of the 27th of October, 1837, is a single bill or a specialty. In my view, it has none of the characteristics of such an instrument, except the form. But when examined in reference to the obligations it creates, it is found that the obligee is one of the obligors. He binds himself with the other fourteen obligors,^jointly and severally,_ to pay to himself the sum of fifteen thousand dollars. He binds himself with the others in the whole and for the whole sum. We have put that construction upon it. Eor we have held, that the representative of the obligee is bound to bear a proportionate share of the loss resulting from the insolvency or absence of some of the joint'and several obligors]
This point has been decided at law. In a suit between these same parties, (Glenn vs. Sims, 1 Rich. 34,) it was decided, that this instrument was a nullity in that Court. The only ground upon which such a decision could have been rendered,, and the plaintiff turned out of that Court, is because it was not a single-bill. If it was a single' bill, or a sealed note under the Stat. 4 Ann, what was the impediment to a suit upon it at law ? It is clear, that the Court-of Law did not regard it in that light, or they would not have granted a nonsuit on the ground that it was a nullity at law. I entirely concur in the view which the Law Court has taken as to the legal construction of the instrument. But even if the case had been erroneously decided at law, it is the law of the case as to these parties.
But if it be not a single bill or sealed note, what is it ? It is certainly, not a nullity in every sense. For the Law Court did not' so regard it, and recommended the plaintiff to this Court. The instrument is valid as an agreement between the parties, ac *196 cording to the true intent and meaning, deduced from the legal import of tbe terms. If it does not fall under that classification of contracts called covenants, it is an anomaly for which I am at a loss to find a name. It is not an assumpsit, for it is under seal. In order to determine its true character, we are to suppose all the obligations which it creates among the different parties, according to our construction, to be reduced to writing, and executed by the parties under their hands and seals. Then, it would be an agreement in writing under seal, imposing upon the parties to it their several duties and obligations: and such an agreement would be, in my view, a covenant.
But an action at law upon a covenant is subject to the plea of the statute of limitations. And it is a rule in this Court to apply the bar of the statute of limitations, wherever upon the same cause of action, the plea of the statute would be sustained in a Court of Law. And the plea of the statute of limitations, I think, should have been sustained by the Court of Equity in this case, but for the view which I have taken of some portion of the evidence.
Glenn had a mortgage of the Glenn’s Spring property to secure the payment of his debt; and also a judgment for the balance of his demand, which were precedent in the way of lien to all other claims. There was a judgment in favor of the Bank of the State of South Carolina for a large amount that was pressing upon the Glenn’s Spring Company for payment. The company desired to make sale of the Glenn’s Spring property to meet the exigency arising from demands of the Bank. Glenn, under these circumstances, consented that the property should be sold in part for cash and in part on a credit until the first day of January, A. D. 1845. He consented to release, and did release, his prior liens in favor of the claim of the Bank. He consented that the Bank should receive the cash instalment of the sale, and the balance of that claim out of the credit instalment, and that the whole of his demand should be paid out of the proceeds of the credit instalment falling due on 1st January, 1845. The company, consisting *197 of the same persons with the obligors of the original agreement, (with the exception of Ann Sims, who had forfeited her stock, and had been released from her liability on the agreement,) passed resolutions for the payment of the Bank debt, and of Glenn's claim in the manner above stated. The resolutions and the agreement which they carried out, modified the agreement of 27th October, 1837, as to the time of payment of the balance due thereon. The original, and this new agreement, are to be construed in pari materia, and as forming one whole agreement. By the terms of the new agreement, Glenn- agreed to receive the balance due him on the 1st January, 1845. Eromthis agreement to the filing of the bill, ¡the time was not sufficient to create the statutory bar. And on this state of facts, I concur in the decree overruling the plea of the statuté, and the general affirmation of the circuit decree.

Appeal dismissed.